**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANLEY MARTIN, FREE THE PEOPLE ROC and NATIONAL LAWYERS GUILD ROCHESTER, INC., | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| -against- | **CASE NO.:** |
| LOVELY ANN WARREN, in her official capacity, THE CITY OF ROCHESTER, a municipal entity, | |
| Defendants. | |

> "[P]ublic ways and sidewalks … occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate. These places—which we have labeled 'traditional public fora'—have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."
>
> *McCullen* v. *Coakley*, 134 S. Ct. 2518, 2528–29 (2014).

Plaintiffs STANLEY MARTIN, FREE THE PEOPLE ROC and NATIONAL LAWYERS GUILD ROCHESTER, INC., complaining of the defendants, respectfully allege as follows:

## I.    PRELIMINARY STATEMENT

1.    Defendant Lovely Ann Warren, Mayor of the City of Rochester, issued an Emergency Order on July 15, 2020 ("Mayor Warren's Emergency Order"), which makes it a class B misdemeanor to "gather in groups of five or more in a public place in the City of Rochester" between the hours of 11:00 p.m. and 5:00 a.m. Mayor Warren's Emergency Order further makes it a class B misdemeanor "for groups of ten or more unrelated individuals to gather

inside of any location or premises unless such a gathering is within premises licensed under the Alcoholic Beverage Control Law and operated in compliance with the regulations and rules promulgated by the State Liquor Authority."

2.      Plaintiffs have been engaged intensively with peaceful protests in Rochester for the past eight weeks, and they and their members have additional peaceful protests planned for the immediate future.

3.      On July 16, 2020 at approximately 2:30 a.m., 30 people were arrested inside of Martin Luther King Jr. Memorial Park in downtown Rochester during a peaceful protest of Mayor Warren's Emergency Order. The arrestees included members of Free the People ROC, four National Lawyers Guild Rochester Legal Observers[TM] and a member of the press. Protesters challenged Mayor Warren's Emergency Order because it criminalizes some speech—when individuals can gather and associate to express themselves and petition the government for a redress of grievances—and because Mayor Warren publicly stated that it was implemented for a discriminatory purpose and would be enforced in a discriminatory manner in Black and brown neighborhoods in the City of Rochester.

4.      Mayor Warren's Emergency Order violates the First Amendment and Fourteenth Amendment by prohibiting groups of five or more people to gather in public places between the hours of 11:00 p.m. and 5:00 a.m.; and because it prohibits groups of ten or more people to gather inside any location other than a bar or restaurant. Because Mayor Warren's Emergency Order was implemented for the purpose of targeting people in Black and brown neighborhoods, it also violates the Equal Protection Clause.

5.      Plaintiffs are entitled to this Court's protection of their constitutional rights. This Court must check the unrestrained and unlawful actions of the City's executive branch.

- 2 -

## II.  JURISDICTION

6.      Plaintiffs bring this action for declaratory judgment, injunctive relief and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitution of the United States.

7.      The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

8.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## III.  VENUE

9.      Venue is proper for the United States District Court for the Western District of New York, pursuant to 28 U.S.C. § 1391(a), (b) and (c) and § 1402(b) because the claims arose in this district.

## IV. THE PARTIES

10.      Plaintiff STANLEY MARTIN is a citizen of the United States and a resident of the City of Rochester, County of Monroe, State of New York. Ms. Martin is an organizer with Free the People ROC, an organization that fights for justice alongside the families most impacted by racially motivated violence and marginalization of Black communities, while working to create just and equitable systems. Free the People ROC works to end state violence and criminalization of Black communities by deconstructing the white supremacist, capitalist patriarchy. As an organizer with Free the People ROC, Ms. Martin regularly plans and participates in protests and political actions, has participated in the recent protests in Rochester, and is likely to be subjected to constitutional violations by the Defendants under the policies and practices described herein, including but not limited to violations of his First Amendment rights and false arrest and detention. Mayor Warren's Emergency Order will substantially restrict when

- 3 -

she can plan and participate in protests, how she can protest, and causes her substantial fear of being retaliated against by the police for associating and gathering with others to exercise her First Amendment rights between the hours of 11:00 p.m. and 5:00 a.m. in the City of Rochester.

11.     Plaintiff FREE THE PEOPLE ROC ("FTP ROC") is an organization that fights for justice alongside the families most impacted by racially motivated violence and marginalization of Black communities, while working to create just and equitable systems. Individual members of FTP ROC regularly plan and participate in protests and political actions, have participated in the recent protests in Rochester, and are likely to be subjected to the constitutional violations by the Defendants under the policies and practices described herein, including but not limited to violations of their First Amendment rights and false arrests and detentions. These constitutional violations would require FTP ROC to spend additional time and resources providing support to its members, diverting resources away from FTP ROC's mission of providing support to movements and increasing the capacity of community members involved in movement work. FTP ROC brings this action on its own behalf and as an organizational representative for its members.

12.     Plaintiff NATIONAL LAWYERS GUILD ROCHESTER, INC. ("NLG Rochester") is a local chapter of the National Lawyers Guild, an organization of lawyers, law students, legal workers, and jailhouse lawyers, who operate as a political and social force, working to build a world where human rights are regarded as more sacred than property interests. Individual members of NLG Rochester have been subject to aggressive policing and incommunicado detention by virtue of their advocacy in support of First Amendment-protected protest activity. NLG Rochester provides "Legal Observers™" who document police behavior during protests, including the most recent ones opposing police violence. It also helps coordinate

legal representation for protesters who are arrested. Individual members of NLG Rochester regularly attend protests as Legal Observers[TM], attended the recent protests in Rochester, and are likely to be subjected to the constitutional violations by the Defendants under the policies and practices described herein, including but not limited to violations of their First Amendment rights and false arrests and detentions. When these constitutional violations occur, NLG Rochester is forced to divert time and resources away from their mission of protecting community members' civil rights and liberties during protests. Furthermore, when Legal Observers[TM] are arrested during protests, NLG Rochester loses the ability to provide oversight of police activities and treatment of protesters. NLG Rochester is further forced to divert resources to find other Legal Observers[TM] to cover the duties of arrested members and volunteers to track arrested Legal Observers[TM] through the legal system.

13.     Defendant CITY OF ROCHESTER was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

14.     Defendant CITY OF ROCHESTER ("CITY") maintains the City of Rochester Police Department ("RPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE CITY OF ROCHESTER.

15.     Defendant LOVELY ANN WARREN ("Mayor Warren") is and was at all times relevant herein the duly elected Mayor for the City of Rochester, who was responsible for, and the chief architect of, the policies, practices and customs of the City of Rochester, including the July 15, 2020 Emergency Order at issue herein. Mayor Warren is sued in her official capacity.

## VI.  STATEMENT OF FACTS

**A. Mayor Warren's Emergency Order**

16.     On June 15, 2020, Mayor Warren issued the Emergency Order pursuant to New York Executive Law § 24.

17.     Mayor Warren's Emergency Order states, in pertinent part:

> "ORDERED that, between the hours of 11:00 p.m. and 5:00 a.m., it shall be unlawful to gather in groups of five or more in a public place in the City of Rochester. For purposes of this clause, a public place includes any outdoor premises or other area that is open to the public, including but not limited to streets, sidewalks, parks, parking lots, vacant lots and any unused or unimproved land. Violation of this clause shall be a class B misdemeanor in accordance with Executive Law §24(5); and it is further

> "ORDERED that, between the hours of 11:00 p.m. and 5:00 a.m., it shall be unlawful for groups of ten or more unrelated individuals to gather inside of any location or premises unless such a gathering is within premises licensed under the Alcoholic Beverage Control Law and operated in compliance with the regulations and rules promulgated by the State Liquor Authority."

18.     A complete copy of Mayor Warren's Emergency Order, as issued, is attached to this complaint.

19.     Despite being dated July 15, 2020, Mayor Warren's Emergency Order states that it became effective at "12:01 a.m. on July 14, 2020."

20.     On July 21, 2020, Mayor Warren extended the Emergency Order, and stated that she would continue to extend the Emergency Order every five days "until the violence stops."

21.     The language of Mayor Warren's Emergency Order purports to justify its issuance based on "concern regarding the transmission of COVID-19 within the City and the effects of the COVID-19 pandemic on the people of the City of Rochester."

22.     There is no public health justification for Mayor Warren's Emergency Order. Public health officials have explained that the odds of catching the coronavirus are nearly 20 times higher indoors than outdoors.

23.     Scientific studies have proven that open spaces prevent the COVID-19 virus from building up in concentrated amounts and being inhaled, which can happen indoors when infected people exhale in a confined space for long stretches of time.

24.     There is no public health justification for permitting groups of 10 or more people to gather indoors, but to limit outdoor gatherings to fewer than five people.

25.     There is no public health justification for permitting groups of 10 or more people to gather inside of bars and restaurants that serve alcohol. In fact, public health officials have identified bars as one of the riskiest places for the spread of the COVID-19 virus.

26.     Public health officials have linked COVID-19 outbreaks around the country to people visiting specific bars, including outbreaks in Baton Rouge, Louisiana, Ada, Idaho and Jacksonville, Florida.

27.     Mayor Warren's public statements indicate that the principal objective of her Emergency Order is to suppress First Amendment activities in Black and brown neighborhoods. Mayor Warren explained the Rochester Police Department will target "hot spot" neighborhoods for enhanced police enforcement of the Emergency Order against individuals who gather on "public sidewalks" and "in our parks."

28.     Public streets, sidewalks, and parks have long been held, by the U.S. Supreme Court and other federal courts, to be the quintessential traditional public forums for speech.

29.     Mayor Warren issued the Emergency Order shortly after several high-profile police misconduct incidents that occurred between 11:00 p.m. and 5:00 a.m. in the City of Rochester.

30.     On June 28, 2020, RPD Officers Vandemar, Badge No. 2846, Lindauer, Badge No. 2363, and Contreras, Badge No. 2512, trespassed inside of the home of a young man named Tobias Massey, where they assaulted, battered and falsely arrested him in response to him lawfully recording the officers forcibly arrest and sit on the neck of a man in the front yard of his home. They arrested Mr. Massey and charged him with Obstruction of Governmental Administration and Resisting Arrest. RPD Chief La'Ron Singletary admitted that based on the officers Body Worn Camera recordings and cell phone recordings of the incident, the officers lacked any reason to arrest Mr. Massey, charge him with any crime, or use any force against him.

31.     On July 5, 2020, at approximately 2:00 a.m., RPD officers responded to a house on Pennsylvania Avenue in response in response to a 911 call that a 16-year-old boy was shot in the face and needed medical assistance. When RPD officers arrived at the boy's house, they immediately assaulted and handcuffed two people who were comforting the boy and tending to his wounds. Coincidentally, Plaintiff Ms. Martin and several of her friends who are also prominent in the activist community were sitting in the back yard of a neighboring home when the police arrived. When Ms. Martin and her friends heard the boy yell out, "we called you for help and now you're abusing us," they responded to the scene. When the group of activists began recording the incident and demanding the release of the two individuals who were handcuffed, the RPD retaliated against them by arresting four of Ms. Martin's friends and charging them with Obstruction of Governmental Administration.

32.     Mayor Warren purports to have implemented and renewed the Emergency Order to protect public safety.

33.     Yet, the City and its Police Department already have a variety of ordinances and state statutes available to protect the public's safety and curb violent crime, to the extent those interests are threatened by the gathering of five or more individuals outdoors, or ten or more individuals indoors, between the hours of 11:00 p.m. and 5:00 a.m.

34.     Among those existing provisions, N.Y. Penal Law § 240.2(6) already forbids, "congregat[ing] with other persons in a public place and refus[ing] to comply with a lawful order of the police to disperse" when such congregation and refusal to disperse is done "with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof."

35.     Mayor Warren nevertheless issued and renewed the new Emergency Order.

**B. Plaintiffs Are Engaged in Peaceful Protests**

### 1. Peaceful Protests in Rochester in 2020

36.     On May 25, 2020, Minneapolis police officers murdered George Floyd, who was handcuffed and lying face down on the ground, by suffocating him to death in broad daylight on the street.

37.     Floyd's murder and the police murder of Breonna Taylor in Louisville, Kentucky, in addition to recent police murders of other Black people in the United States sparked the largest movement for social and racial justice in history and has included peaceful protests around the world against anti-Black police violence, systemic racism, and inequality.

38.     In Rochester, Plaintiffs are leaders of this movement against anti-Black racism and for human rights and social justice.

- 9 -

39.     Since the end of May 2020, there have been weekly protests and actions throughout the city of Rochester, ranging in size from a few dozen people to thousands. These protests have occurred throughout Rochester and are often centered in Martin Luther King Jr. Memorial Park.

40.     Plaintiffs have been part of the largest global movement for human rights in recent memory. The Plaintiffs Stanley Martin and FTP ROC and their membership have been in the streets protesting police brutality as part of the movement for Black lives.

41.     Plaintiffs Ms. Martin and FTP ROC have called on Mayor Warren to defund the Rochester Police Department, and redirect resources to Black communities to reduce poverty and provide greater educational and job opportunities, which research has shown is more effective in reducing violent crime than an increased police presence.

42.     Legal Observers$^{TM}$ associated with the Plaintiff National Lawyers Guild Rochester, Inc. have been attending the protests to document police activity and police constitutional violations.

**2. Peaceful Protest on the Night of July 15–16, 2020**

43.     In response to Mayor Warren's Emergency Order, Ms. Martin and FTP ROC organized a protest for the night of July 15–16, 2020.

44.     The protest began around 11:00 p.m. in Martin Luther King Jr. Memorial Park. Several organizers made speeches explaining why Mayor Warren's Emergency Order violated the First Amendment and would be enforced in a discriminatory manner.

45.     At approximately 11:30 p.m., the protesters engaged in a peaceful march around the streets of downtown Rochester with a police escort leading the way. The protesters marched

for approximately one hour and then returned to Martin Luther King Jr. Memorial Park at approximately 12:30 a.m.

46.     The peaceful protest continued for approximately 30 minutes after the protesters returned to the park before the Rochester Police Department began positioning around the park to kettle and arrest the protesters.

47.     At approximately 1:26 a.m., approximately 19 Rochester Police Officers lined up on Court Street in front of the park in preparation to kettle and arrest the protesters.

48.     An NLG Rochester Legal Observer[TM], Katherine Adamides, attempted to write down the names and badge numbers of the police officers, but 14 of the 19 officers covered their names with tape or their hands and arms, and three were covered their badge numbers with their hands and arms.

49.     At approximately 1:28 a.m., the RPD began continuously reading Mayor Warren's Emergency Order over a loudspeaker once every minute to two minutes.

50.     At approximately 1:30 a.m., RPD announced that if the group did not disperse, they would be arrested for violating Mayor Warren's Emergency Order. In response, Tarik Grandoit asked several officers how far away from the group he had to stand to not be arrested. Six feet? Ten feet? Twenty feet? None of the officers informed Mr. Grandoit how far he had to stand from the rest of the group to avoid arrest.

51.     At approximately 1:40 a.m., approximately 20 additional RPD officers approached the protesters from behind. At the same time, the officers on Court Street approach the protesters with their batons extended in front of them.

52.     At 1:44 a.m., RPD began arresting protesters one by one. The first person arrested was Emily White, a doctor who works at Highland Family Medicine. Ms. White pleaded for the officers to let her go, but they refused.

53.     At approximately 2:16 a.m., RPD issued a three-minute warning to disperse or be arrested.

54.     At approximately 2:17 a.m., RPD officers encircled the 30 protesters, including four NLG Legal Observers[TM] and one member of the press.

55.     At approximately 2:18 a.m., NLG Legal Observer[TM] Katherine Adamides attempted to leave the circle, but an RPD officer physically prevented her from doing so. Ms. Adamides, who was wearing a neon green Legal Observer[TM] hat and carrying the notepad and pen she had been using to document police activity, repeatedly asked the officer whether she was being detained. Each time, the officer did not respond, and Ms. Adamides again attempted to leave the circle. Noticing this interaction, a commanding officer pointed at Ms. Adamides and said, "She stays in." Ms. Adamides asked the commanding officer if she was being detained, and he replied, "You're under arrest."

56.     When the protesters were arrested and removed from the kettle, one by one, they were escorted by RPD officers to three vans, where they were handcuffed and processed. During the arrest processing, RPD officers removed each protester's mask to take their picture with their arresting officer. Many officers refused to put the protesters' face masks back on—and when they did, they touched the protesters' faces without having washed or sanitized their hands.

57.     The protesters were then packed into transport vans. Because the RPD refused to allow many of the protesters to put their masks back on, multiple people in each van were not wearing face coverings. Eventually the vans drove to the police station at 630 North Clinton

Avenue, but before they departed for the station, protesters were forced to sit in the van for approximately 30 minutes. The 30 protesters remained packed inside of three crowded vans for over an hour, many without face coverings, which created an unreasonable risk of exposure to COVID-19.

58.     Eventually, the protesters were removed from the vans, lined up against a wall, questioned, then issued appearance tickets charging them with a violation of Section 24 Sub. (A) and (E) of the Executive Law. Upon information and belief, none of the protesters were charged with any other crime or violation.

**C. Plaintiffs Fear Continuing their Lawful Activities**

59.     The protesters' First Amendment rights were at their zenith when they were arrested—they were assembled in a quintessential public forum to engage in, document and observe a protest of Mayor Warren's Emergency Order. Mayor Warren explained the Emergency Order was implemented for the purpose of targeting Black and brown neighborhoods for enhanced police enforcement, and the plain language of the Emergency Order purports to strip individuals of their First Amendment rights.

60.     Plaintiffs have planned frequent protests and political actions into the foreseeable future, including the weekend of July 24, 2020. All of the Plaintiffs herein have made plans and put aside resources to participate in or attend one or more activity this weekend.

61.     NLG Rochester Legal Observers have observed over a dozen demonstrations since the end of May 2020, when nationwide protests against systemic racism, inequality, and police violence, sparked by the murders of George Floyd and Breonna Taylor, began.

62.     Plaintiff NLG Rochester seeks to protect the First Amendment rights of protesters by observing protests and obtaining information from protesters who are arrested so they can be tracked and coordinate pro bono or low-cost representation.

63.     Plaintiffs each plan to continue to engage in weekly anti-police brutality protests in Rochester for the foreseeable future, including between the hours of 11:00 p.m. and 5:00 a.m.

64.     Thus, as long as Mayor Warren's Emergency Order is in place, Plaintiffs face a substantial likelihood of arrest and further violation of their First and Fourth Amendment rights.

65.     Plaintiffs would like to continue exercising their First Amendment rights of speech, assembly, observing, and newsgathering, but they fear that RPD officers will arrest or physically abuse them for violating Mayor Warren's Emergency Order.

66.     Specifically, Plaintiff FTP ROC has members who are not going to attend the protests and rallies planned for this weekend because they fear RPD officers will falsely arrest them, as they did to protesters on the night of July 15–16, 2020.

67.     The First Amendment contains no exception proscribing criticism of the Mayor or of the police.

68.     Defendants' actions created a substantial chilling effect and deterrent to First Amendment protected activity by burdening free speech activities with the risk of arrest, of being threatened with physical harm and of being, in fact, injured by the police, bound with handcuffs and having one's identification and association with a criticism of the mayor and the police collected and recorded by the police and transferred to federal and other law enforcement authorities for data warehousing and collection.

69.     These are civil rights violations that the Constitution does not permit.

## VII. LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF

**Freedom of Speech, Peaceful Assembly, the Press, and the Right to Petition the Government for Redress of Grievances under the U.S. Constitution
In Violation of the First Amendment
(42 U.S.C. § 1983)**

70.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

71.     Mayor Warren's Emergency Order and its enforcement and threatened continued enforcement of the Emergency Order violate the freedom of speech guaranteed by the First Amendment and Fourteenth Amendment of the United States Constitution.

72.     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to injunctive relief prohibiting the City from violating their rights, privileges and immunities—and those of others not before the Court as well—under federal law.

### SECOND CLAIM FOR RELIEF

**Freedom of Movement under the U.S. Constitution
In Violation of the First and Fourteenth Amendments
(42 U.S.C. § 1983)**

73.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

74.     Mayor Warren's Emergency Order and its enforcement and threatened continued enforcement of the Emergency Order violate the freedom of movement guaranteed by the First Amendment and Fourteenth Amendment of the United States Constitution.

75.     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to injunctive relief prohibiting the City from violating their rights, privileges and immunities—and those of others not before the Court as well—under federal law.

## THIRD CLAIM FOR RELIEF

### Violation of Equal Protection Clause
### (42 U.S.C. § 1983)

76.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77.     Mayor Warren's Emergency Order, the City's enforcement of the Emergency Order, and the City's threatened continued enforcement of the Emergency Order violates the Equal Protection Clause of the *Fourteenth Amendment* of the United States Constitution.

78.     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to injunctive relief prohibiting the City from violating their rights, privileges and immunities—and those of others not before the Court as well—under federal law.

## FOURTH CLAIM FOR RELIEF

### Vagueness
### (42 U.S.C. § 1983)

79.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

80.     Mayor Warren's Emergency Order is void for vagueness and so violates the *First Amendment* and *Fourteenth Amendment* of the United States Constitution.

81.     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to injunctive relief prohibiting the City from violating their rights, privileges and immunities—and those of others not before the Court as well—under federal law.

## FIFTH CLAIM FOR RELIEF

### Declaration of Rights
### (28 U.S.C. § 2201)

82.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

83.     In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought, under 28 U.S.C. § 2201.

84.     There is an actual controversy within the jurisdiction of this court, inasmuch as Defendant Mayor Lovely Ann Warren has issued, renewed, and declared that she intends to continually renew the Emergency Order, which is unlawful and violates the First Amendment and Fourteenth Amendment, as described herein.

85.     Plaintiffs are entitled to a declaration that Mayor Warren's Emergency Order is unlawful, and an injunction precluding Defendants from continuing to enforce it.

## PRAYER FOR RELIEF

**WHEREFORE and in light of the foregoing**, Plaintiffs pray for a judgment and the following relief:

A.     A declaration, pursuant to 28 U.S.C. § 2201, that the portions of Mayor Warren's Emergency Order at issue in this complaint are unconstitutional, void, without effect, and unenforceable;

B.     A declaration, pursuant to 28 U.S.C. § 2201, that the portions of Mayor Warren's Emergency Order at issue in this complaint are unlawful because they violate Plaintiffs' Freedom of Speech, Peaceful Assembly, the Press, and the Right to Petition the Government for Redress of Grievances, in violation of the *First Amendment*;

C.      A declaration, pursuant to 28 U.S.C. § 2201, that the portions of Mayor Warren's Emergency Order at issue in this complaint are unlawful because they restrain Plaintiffs' ability to assemble in peaceful protest, observe, and gather news, in violation of the *First Amendment*;

D.      A declaration, pursuant to 28 U.S.C. § 2201, that the portions of Mayor Warren's Emergency Order at issue in this complaint are unlawful because they restrain Plaintiffs' freedom of movement, in violation of the *First Amendment* and *Fourteenth Amendment*;

E.      A declaration, pursuant to 28 U.S.C. § 2201, that the portions of Mayor Warren's Emergency Order at issue in this complaint are unlawful because they are void for vagueness, in violation of the *First Amendment*;

F.      An injunction, pursuant to 28 U.S.C. § 2202, permanently enjoining the Defendants from enforcing Mayor Warren's Emergency Order, as described in this complaint, and specifically requiring that the Defendants and their officers and agents:

    a.      Refrain from interfering in or otherwise policing lawful and peaceful assemblies and protests in the City of Rochester, including between the hours of 11:00 p.m. and 5:00 a.m.;

    b.      Cease enforcement of Mayor Warren's Emergency Order;

    c.      Refrain from covering their names and badge numbers when engaging in law enforcement activities in the City of Rochester, and provide their name and badge number upon request;

G.      Award the plaintiffs the costs of this action and reasonable attorney's fees as allowed by law;

H.      Any other relief this Court deems proper.

Dated: New York, New York            Respectfully Submitted,
       July 24, 2020

- 18 -

ROTH & ROTH, LLP

By:        ~/s/~
Elliot Shields, Esq.
Attorneys for Plaintiffs
192 Lexington Avenue, Suite 802
New York, New York 10016
Ph: (212) 425-1020
eshields@rothandrothlaw.com